NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| PHILIP CUNNINGHAM : | **Hon. Dennis M. Cavanaugh** |
| Petitioner, : | **OPINION** |
| v. : | Civil No. 09-CV-1409 (DMC)(JAD) |
| JOHN E. MAIN, et al. : |  |
| Respondent. : |  |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon Phillip Cunnigham's ("Petitioner") Petition for a Writ of Habeas Corpus, as well as Petitioner's motion to compel discovery. Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. After considering the submissions of all parties, it is the decision of this Court for the reasons herein expressed that Petitioner's Petition for a Writ of Habeas Corpus is **denied ,** and Petitioner's motion to compel discovery is **dismissed** as moot**.**

**I.   BACKGROUND AND PROCEDURAL HISTORY**

Petitioner was first charged as a juvenile in 1981 with criminal solicitation to commit involuntary sexually deviant intercourse. Petitioner pled guilty to a misdemeanor and received a term of probation.

Petitioner was re-arrested in 1987 and charged with soliciting a minor to commit involuntary deviate intercourse. Petitioner pled guilty to the misdemeanor of corruption of a minor and was sentenced to three years of intensive probation.

Petitioner's third arrest occurred shortly thereafter, and he was once again charged with solicitation of two minor boys to commit involuntary sexually deviate intercourse. In November, 1987 Petitioner was sentenced to a period of incarceration of between 11 and ½ to 23 month sentence followed by three years of probation. In 1989 Petitioner was once again arrested and charged with solicitation to commit involuntary sexually deviate intercourse, as well as corruption of a minor and assault. He was sentenced to a ten-year period of incarceration. He was released at the expiration of the maximum sentence in February, 1999. Several weeks after his release, Petitioner was once again arrested and charged with two counts of endangering the welfare of a child, with one count in the fourth degree and the other in the second degree. Petitioner pled guilty to the fourth degree count on the basis of a recommended maximum sentence of eighteen months. The plea agreement contained two hand-written stipulations which were also read into the record at Petitioner's plea allocution, which stated that New Jersey's Sexually Violent Predator Act ("SVP") was not applicable to Petitioner, and that the State had no information or report that Petitioner suffered from any mental disease or defect. Petitioner served his eighteen month sentence, and was due to be released on March 1, 2001. On February 27, 2001, the Attorney General filed a petition in the Superior Court of Burlington County seeking Petitioner's civil commitment pursuant to the SVP. On that day, the Court found probable cause to issue a temporary commitment order. On March 19, 2001 Petitioner filed a motion to dismiss the temporary commitment order because of the stipulations written into the 1999 plea agreement. The motion to dismiss was denied on October 26, 2001. An interlocutory appeal was taken, and the Appellate Division affirmed on April 8, 2002. Petitioner filed a motion for leave to appeal to the New Jersey Supreme Court which was denied on July 16, 2002. A final commitment hearing was held in January, 2003 following which Petitioner

was committed as a sexually violent predator. Petitioner appealed, but did not raise the issue of the stipulations in the plea agreement.[1] The Appellate Division reversed and remanded because the trial judge relied too heavily on hearsay from non-testifying experts. After four days of evidentiary hearings Petitioner was again committed, and again appealed. Once again, Petitioner failed to raise the issue of the plea agreement stipulations, but instead raised issues related to personal jurisdiction, reliance on hearsay and his contention that, in violation of the Constitution, his moral beliefs had been used as a basis for the Court's ruling at his commitment hearing. On June 25, 2008 the Appellate Division affirmed his commitment. Petitioner petitioned for certification from the June, 2008 decision, once again failing to raise the issue of the plea agreement stipulations now before the Court. On September 29, 2009 the New Jersey Supreme Court denied his motion for certification. This petition followed on March 26, 2009.

## II.    LEGAL STANDARD

Section 2241 provides in relevant part:

(c) The writ of habeas corpus shall not extend to a prisoner unless-

….(3) He is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2241(c)(3). "To invoke habeas corpus review under § 2241, the petitioner must satisfy

3

---

[1] Petitioner raised four issues in this appeal. First, that "the Court erred in finding that P.A.C. had been convicted of an offense that was the statutory equivalent of one defined as 'sexually violent' under the N.J. Code." Second, that "the Court erred in admitting hearsay evidence both as exhibits and through the testimony of the expert witness. Third, that "the trial Court erred in relying in part on material and expert opinions not in evidence and not subject to cross-examination in concluding that P.A.C. was a sexually violent predator threby denying P.A.C. his right to confront the witnesses against him, and fourth, that 'the State failed to prove by clear and convincing evidence that P.A.C. is subject to civil commitment under the SVP."

two jurisdictional requirements: the status requirement that the person be 'in custody,' and the substance requirement that the petition challenge the legality of that custody on the ground that it is 'in violation of the Constitution or laws or treaties of the United States.'" Tavares v. United States, No. 09-6042, 2010 U.S. Dist. LEXIS 39584, at *2-3 (D.N.J. Apr. 22, 2010) (citing 28 U.S.C. § 2241(c)(3)); see also Maleng v. Cook, 490 U.S. 488, 490 (1989).

28 U.S.C.A. § 2254 provides in relevant part:

**(b)(1)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--

**(A)** the applicant has exhausted the remedies available in the courts of the State; or

**(B)(i)** there is an absence of available State corrective process; or

**(ii)** circumstances exist that render such process ineffective to protect the rights of the applicant.

**(2)** An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

**(3)** A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

**(c)** An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

**(d)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

**(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

**(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

**(e)(1)** In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

**(2)** If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--

**(A)** the claim relies on--

**(i)** a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

**(ii)** a factual predicate that could not have been previously discovered through the exercise of due diligence; and

**(B)** the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

### III.    DISCUSSION

Before commenting on the merits of Point I of Petitioner's petition, which the Court feels obligated to do out of respect to the seriousness of the issue raised, it must be noted that a careful review of the procedural history reveals, as the Government correctly argues, that Petitioner has failed to raise the grounds that he now asserts in any appeal filed after 2002. Thus, the Government's contention that Petitioner's writ is time-barred is accurate. As a matter of law, these considerations require the Court to dismiss the petition.

Nonetheless, the Court is not unsympathetic to Petitioner's contention that he was

5

double-crossed, and that the plea agreement he entered into voluntarily, believing that he would serve an eighteen month period of incarceration, has now extended into an indefinite term of involuntary civil commitment. Although this does not help Petitioner, and the Court is unable to give him the relief he seeks, the Court is troubled by the facts of this case. That being said, however, as the Appellate Division correctly pointed out in 2002, the stipulation that was entered into by the Cumberland County prosecutor was simply "void as against public policy." (349 N.J. Super. At 572), and legally meaningless and unenforceable. Moreover, what Petitioner attempts to paint as a nefarious scheme to abrogate the plea agreement was, in fact, nothing other than the Attorney General acting in conformity with both his statutory and moral obligation to investigate the possibility that an individual who had been convicted of five separate offenses involving the sexual abuse of minors and who had refused the recommended treatment at the Adult Diagnostic Treatment Center might be a danger to society. Thus, the Court wholly rejects Petitioner's contention that the Government acted in bad faith, or that it deliberately and intentionally violated the plea agreement.

     Although the Court accepts that Petitioner may have been led to believe that the stipulations written into the plea agreement were sufficient to protect him from civil commitment under the Sexually Violent Predator Act, a careful reading of the record reveals that Petitioner ought not to have been under any such delusion. Most tellingly, on the sheet which contained the stipulation upon which Petitioner relies, question No. 6 states "do you understand that if you are incarcerated as a repetitive and compulsive sex offender you may be subject to involuntary commitment following the expiration of your sentence?" to which Petitioner answered "yes" by

circling a box and affixing his signature. Underneath that are the two hand-written stipulations[2] to which Petitioner now refers. One says "it is stipulated that the N.J. sexual violent predator act does not apply to this Defendant," and the other that "it is stipulated that the State has no report or information that Defendant suffers from mental illness." (ECF Doc. 1-1, page ID #51). These "stipulations" are clearly inadequate to accomplish what Petitioner believed they would be able to do when he signed the document. First, no one, not the county prosecutor nor anyone else, has the power to declare that a law of the State does not apply to an individual. Such a promise is, as the Appellate Division found, void as to public policy. Other Courts have dealt with this issue, and concluded "we are not bound by a party's concession as to the meaning of the law, even if that party is the government and even in the context of a criminal case." *See U.S. v. Ogles*, 440 F.3d 1095, 1099 (C.A.9 (Ariz.),2006). Moreover, "even if a concession is made by the government, we are not bound by the government's erroneous view of the law." *See United States v. Miller,* 822 F.2d 828, 832 (9th Cir.1987). As the Iowa Supreme Court noted, "the propriety of this rule is especially clear when the controversy at issue involves important public interests." *Polk County Bd. of Sup'rs v. Polk Commonwealth Charter Com'n,* 522 N.W.2d 783, 791 (Iowa,1994).This case certainly involves important public interests, albeit interests that are at odds with one another. On the one hand is Petitioner's due process and fairness concerns, and on the other is the state's legitimate concern with the protection of minors. The legislature has determined that in rare cases where public safety is endangered by the release of an individual, that person must be civilly committed. The Court must defer to the legislature in this matter.

      The second statement, that the State had no report that Petitioner suffered from mental

---

[2] It is unclear to the Court who actually penned the stipulations, although it ultimately does not affect the Court's analysis.

illness, was clearly temporal in nature. At that moment, the State had no such report. Specifically, the stipulation says nothing more than that on November 10, 1999 the State had no such report. Prior to Petitioner's commitment hearing, the State did have independent diagnoses of his mental illness. The reports, and ultimately the testimony of several psychiatrists, invalidated and rendered meaningless the plea stipulation. This is particularly noteworthy because as of November, 1999, Petitioner had not even been evaluated at the ADTC as part of the pre-sentencing procedure. It was premature for him to rely on any stipulations regarding his sentence or mental status prior to that evaluation. Moreover, the sentencing judge's remarks shed light on what was known by the State at Petitioner's sentencing on April 14, 2000, well before his civil commitment, when the judge noted that when Petitioner was evaluated he was "not willing" to enter the treatment unit. The judge addressed Petitioner and stated on the record, "I'll be really honest with you, Mr. Cunningham, I think sex offenders–specific treatment is what you need and need very badly. But unfortunately the legislature has left it in your hands, not in mine." (ECF Doc. 1-1, page ID # 97).

Petitioner's second ground as raised in the Habeas petition before the Court offers an alternative basis for concluding that the stipulations in the plea agreement are enforceable. As the Court has previously stated, and as the Appellate Division clearly enunciated in 2002, there is simply no way that any Court can uphold the enforceability of the stipulations, be they *ultra vires* or not. Petitioner's third ground is meant, the Court finds, to preempt an argument by the Government which the Government declined to make. It is not an independent ground for relief. Also, since neither of these alternative grounds have been previously raised in any State proceeding, they are not available to Petitioner at this juncture. Based on these observations, it is

clear to the Court that even if Petitioner's claims were not procedurally defaulted, they would be unavailing.

IV.     **CONCLUSION**

For the reasons stated herein, the Petitioner's petition for a writ of Habeas Corpus is **denied**, and his motion to compel discovery is **dismissed** as moot. An appropriate order follows this opinion.

    S/Dennis M. Cavanaugh

Dennis M. Cavanaugh, U.S.D.J.

Dated:       December _22_, 2010

cc:          All Counsel of Record

           Hon. Joseph A. Dickson, U.S.M.J.

           File